### LAUGHARN v. WELCH et al.

Circuit Court of Appeals, Ninth Circuit.
October 29, 1928.

No. 5504.

Brydolf & Leovy and Vernon M. Brydolf, of Pasadena, Cal., for appellant.

Goldman & Lieberman and Jacob J. Lieberman, all of Los Angeles, Cal., for appellees Welch.

O'Melveny, Tuller & Myers and John R. Girling, all of Los Angeles, Cal., for appellee Pacific Southwest T. & S. Bank.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. This was a suit by a trustee in bankruptcy to set aside a transfer of stock from the bankrupt to his wife. The facts are substantially as follows: In the year 1911, Mabel F. Welch, the wife of the bankrupt, with her own funds, but through the agency of her husband, purchased 50 shares of stock in Gunst & Co. for the sum of approximately $2,000, and about a year and a half later an additional 25 shares for approximately $1,000. · The two certificates of stock were issued in the name of the husband, who indorsed them and placed them in an envelope marked "Property of Mabel F. Welch." The wife then delivered the certificates to her father, who deposited them in his safe at Livermore with other papers belonging to her. The certificates apparently remained in this custody until 1919, when they were transferred to the wife on the books of the Gunst Company. February 19, 1919, the Welchs opened an account with the Farmers' & Merchants' National Bank of Los Angeles, and signed an agreement reciting that the account was opened and held by them in joint ownership, with full right of survivorship; the account to be payable to their joint or several order during their lives, and upon the death of either to become the 'absolute and exclusive property of the survivor by right of survivorship, and payable to the order of the survivor. Each party further authorized the other to sign their several names to all checks and orders upon the account, and it was agreed that all accretions to the account and deposits of money thereafter made should be upon the terms therein expressed. Later in 1919 the stock owned by the wife was sold for approximately $8,000, and the proceeds of the sale were deposited in the above account. In 1920 the wife, through her husband, purchased 100 shares of stock of the General Cigar Company for the sum of $6,000. The certificate was issued in the name of the husband through mistake of the broker making the purchase, and the purchase price was paid by check of the husband on the joint account. The certificate was then indorsed, marked, as before, the property of Mabel F. Welch, and was deposited in a safe deposit box, where it apparently remained until March 24, 1925. On that day the bankrupt applied to the Pacific Southwest Trust & Savings Bank for a loan in the sum of $2,500, and offered the certificate of stock in question as security. He informed the bank that the stock belonged to his wife, and the loan was thereupon made on the promissory note of the wife, secured by an assignment or deposit of the stock, and the stock was then or soon thereafter transferred to the wife on the books of the General Cigar Company. At the time this transfer was made, the bankrupt was apparently insolvent, although he had no knowledge of that fact as his insolvency was brought about by the acts of his partner in business of which he then had no knowledge. Thereafter, on November 27, 1926, the husband was adjudged a bankrupt on his voluntary petition, and a trustee in bankruptcy was appointed in due course.

On the foregoing facts, the court entered a decree of dismissal, from which the trustee in bankruptcy has appealed. Considerable stress is laid on the form of the agreement between the husband and wife pursuant to which the money was deposited in the bank, but we are not now concerned with the rights of the survivor in the event of the death of one of the parties. The account has been checked out and closed, and the agreement between the parties pursuant to which the deposit was made in the first instance is not of controlling importance. Had the wife originally purchased the stock in her own name, paying for it by check on the joint account with the consent of her husband, at a time when there was no question as to his entire solvency, we apprehend that her title would not now be open to question, and the situation is not changed by the mere fact that the husband purchased the stock for her, taking the certificate in his own name through an error of the broker. In either case the stock belonged to her, and the fact that the certificate, which is only evidence of title, stood in the name of the husband does not affect or impair her rights. By the purchase, the husband became a mere trustee for his wife, and a trustee violates no rights of creditors by transferring property to the beneficial owner. They have no lawful right to ask

868

their debtor to hold property to which he has no moral claim. In other words, the law does not prevent the voluntary doing of that which ought to be done. 27 C. J. 434.

The decree of the court below is affirmed.